MARR *v.* STATE

No. 42556 December 16, 1963 159 So. 2d 167

*Wall Doxey, Jr.,* Holly Springs, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

McElroy, J.

J. G. Marr, appellant, was indicted for murder of Rufus Edwards, a seventy-two-year-old resident of Byhalia, Mississippi, in the Circuit Court of Marshall County. He was tried once and had a mistrial; at the second trial he was found guilty of manslaughter and was sentenced to serve a term of ten years in the state penitentiary.

Appellant was the duly elected constable of the Third District of Marshall County. He was indicted at the February 1961 term of court.

On March 6, 1961, during the February term of court, attorney for appellant, or defendant, filed a motion to quash the indictment, stating that the Board of Supervisors made a complete departure from the law, that is, section 1766 of the Mississippi Code of 1942, Rec.,

in the method of drawing the jury, in particular the part of the section which provides that the list shall be taken as nearly as it can be conveniently done from the several supervisors' districts in proportion to the number of qualified persons in each district, etc. There was no charge of fraud. The defendant moved the court to hear proof on this motion to quash indictment prior to swearing and qualifying of the special venire in the case. The record does not show in any respect that the motion was ever passed on by the court, nor does the record show that the motion was ever called to the attention of the court. Even on the motion for a new trial, this was not set out as one of the grounds.

The appellant was tried at the August 1962 term of court. At the close of the state's testimony the defense attorney made a motion for a directed verdict. At conclusion of both state and defense testimony, appellant made the following motion:

"Comes now the Defendant by and through his attorney and moves the court for a new trial and as grounds therefor assigns the following: 1. That the State of Mississippi failed to prove beyond a reasonable doubt and to a moral certainty the charge of manslaughter. 2. The State of Mississippi failed to prove beyond a reasonable doubt and to a moral certainty the indictment for murder as required by law. 3. That the jury verdict was contrary to the great weight of the evidence." The court overruled this motion.

Both motions of the defendant were dictated into the record, and no formal motion was made by the attorney for a new trial other than the dictated motion.

The judgment of the court shows that the motion of the defendant for a new trial was overruled. It shows that the motion for an appeal to the Supreme Court was sustained, and that appearance bond on appeal was set for $5,000, subject to the Clerk's approval. The supplemental motion for a new trial was overruled.

This order was entered on the 5th day of September, 1962. The defendant on September 5, 1962 made a $5,000 personal appearance bond to the Supreme Court, which was approved on that date. The costs bond for appeal was also made, in the amount of $500, and was approved on the 6th day of September by the Clerk. All of this was done in the August term of court.

A similar question to the one raised here as to the motion to quash the indictment was passed on by this Court in Boatwright v. State, 143 Miss. 676, 109 So. 710. The Court stated: "Neither does the record show that the court ever took any action upon the demurrer, which, likewise, was filed on August 7, 1925, and no effort on the part of the defendant to have the demurrer disposed of; nor does it appear that the court had called to its attention the demurrer, save and except what may be inferred from the amendment permitted by the court's order."

In Polk v. State, 156 So. 2d 592 (Miss.), and cases cited therein, it was held that appellant's decision to appeal to the Supreme Court "constituted a waiver or abandonment of his motion for new trial," and complaint can not be made on appeal.

24 C.J.S., Criminal Law, § 1679, p. 1208, states: "Demurrer or other similar objection. Where the record shows no ruling on a demurrer or similar objection or challenge to an indictment or other accusatory pleading or plea, questions as to such demurrer or objection cannot be considered, unless the indictment or information is so wholly insufficient that it will not support a judgment of conviction; and where a ruling on a demurrer or similar objection is rested on a particular ground, other grounds of objection not ruled on are not properly preserved for consideration by the reviewing court."

 ██ We are of the opinion that such motions not passed on by the court are not reversible error, and

that in order for a question to be preserved for review on appeal it is necessary that there be an actual ruling upon the motion. ▮ ▮ If a party permits the court to proceed to judgment without an order of the court upon his motion or objection, he will be held to have waived the right to have same acted upon. ▮ ▮ Thus where a motion to quash an indictment is filed, it is the duty of the party filing the motion to call up the motion for action, and if, instead of so doing, he goes to trial without objection, he can not for the first time on appeal insist that his motion should have been sustained, unless the indictment is so wholly insufficient that it will not support a judgment of conviction.

▮ ▮ The jury laws are, by section 1798, Mississippi Code 1942, Rec., directory only, and there can be no reversal unless there has been a radical departure from the statutory scheme. Kouvarakis v. Hawver, 208 Miss. 697, 45 So. 2d 278. Therefore, even if a hearing was had and proof developed, the mere fact that the jurors were not drawn proportionately from the districts of the county would not vitiate the indictment. Atkinson v. State, 137 Miss. 42, 101 So. 490.

The facts of the case seem to be as follows: On a Sunday afternoon appellant, the deceased and others were in a cafe operated by a Mr. Turner in the town of Byhalia. Deceased was sitting toward the rear of the cafe, while appellant was sitting with another at a table by the front window. There had been some conversation between them. Deceased departed the cafe through a side door when, according to the state's witness, appellant arose to go outside saying, "I might as well go out and have it out with the old man," or something to that effect. When appellant and the deceased were outside, appellant was seen to draw his blackjack. He and the deceased engaged in an altercation during which appellant was striking down with his blackjack at the head of deceased. They clinched and fell over

with deceased on top. During this scuffle appellant was injured about the face. The witness Dudley "Shine" Parker went outside and separated the two men, and as they moved along they attempted to re-engage, but were finally separated, and the deceased moved on away toward a park in the vicinity, stating that he was trying to go home. Meanwhile, appellant had picked up his gun and blackjack and put his glasses on, and at a time when deceased was some distance from him, appellant fired two shots, both of which entered the left side of the body of deceased and took a true course through the body toward the right side. While appellant claimed self-defense in that deceased was advancing on him, the evidence shows that deceased was unarmed, and even appellant's own witness testified that he couldn't say whether the deceased was walking sideways to appellant when appellant shot him. This same witness testified that deceased had his hands down, with his hands kind of flopping as he walked. Appellant himself testified that he was not afraid of deceased.

The state's case is based primarily on the testimony of the witness Parker, and a strenuous effort was made to discredit him by impeaching witnesses. An effort was made also to show that the deceased was drunk, but the record shows that appellant, too, even though he was the elected constable, had that very morning and afternoon been drinking Vodka from a bottle which he procured for himself and another.

 While appellant claimed that the deceased was advancing on him and that he shot in self defense, the jury was under no compulsion to believe his statements. Willette v. State, 224 Miss. 829, 80 So. 2d 836. Appellant's version would have to be accepted as true were it not contradicted by other witnesses, matters of common knowledge or physical facts and circumstances, and in the case at bar all of these elements were present. The testimony for the state, even when combined with

that for the defense, shows that appellant was in no danger at the time he shot and killed deceased. ■■ ■ The verdict was amply supported by the evidence, and the Supreme Court can not set it aside. Buggs v. State, 214 Miss. 284, 58 So. 2d 791; Simmons v. State, 109 Miss. 605, 68 So. 913.

■■■ This case is similar to Riley v. State, No. 42,468 on the docket of this Court decided November 4, 1963, reported in 157 So. 2d 381, where there is a conflict in the evidence and both the credibility of the state's witnesses and accused himself must be determined. Only a jury can do this. The jury is the sole judge of the weight and credibility of witnesses, and this is not a matter for the reviewing court. It is the function of the jury, especially in criminal cases, to pass upon the weight and worth of the evidence and the credibility and veracity of the witnesses, and the Supreme Court can not set aside a verdict of guilty unless it is clear that such a verdict is the result of prejudice, bias or fraud, or is manifestly against the weight of the credible evidence. Matthews v. State, 243 Miss. 568, 139 So. 2d 386; Ivey v. State, 206 Miss. 734, 40 So. 2d 609; Scott v. State, 185 Miss. 454, 188 So. 546; Gangloff v. State, 242 Miss. 168, 134 So. 2d 481.

We believe there was sufficient evidence to sustain a verdict of manslaughter and that the jury was justified in believing beyond a reasonable doubt that appellant was guilty. The case is therefore affirmed.

Affirmed.

*Ethridge, Gillespie, Rodgers and Jones, JJ.,* concur.