BRIDGES, P.J.,
for the Court.
¶ 1. Following a collision between Robert S. Good and Kermit L. Indreland, Good filed a negligence action against In-dreland in the Circuit Court of Jackson County. After two days of hearing evidence and argument of counsel, the jury returned a verdict for Indreland. Aggrieved, Good has appealed and now comes before this Court raising five issues, which are as follows:
I. WAS THE VERDICT CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE, EVINCING BIAS, PASSION, AND PREJUDICE ON BEHALF OF THE JURY?
II. DID THE TRIAL COURT ERR IN DENYING GOOD’S MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING A CLAIM FOR WORKERS’ COMPENSATION?
III. DID THE TRIAL COURT ERR IN DENYING GOOD’S MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING HIS INVOLVEMENT IN A SUBSEQUENT COLLISION?
IV. DID THE TRIAL COURT ERRONEOUSLY FAIL TO INSTRUCT THE JURY AS TO A DUTY OF DRIVERS TO GIVE AN AUDIBLE SIGNAL WHEN OVERTAKING ANOTHER VEHICLE?
V. DID THE TRIAL COURT ERRONEOUSLY FAIL TO INSTRUCT THE JURY AS TO A DUTY OF DRIVERS TO REDUCE SPEED WHEN A SPECIAL HAZARD EXISTS AS TO OTHER TRAFFIC?
¶ 2. Our review of the record reveals no such errors, and we, accordingly, affirm the jury’s verdict for Indreland.
FACTS AND PROCEDURAL HISTORY
¶ 3. On April 8, 2001, Kermit L. Indre-land collided with Robert S. Good on Highway 613 in Jackson County, Mississippi. Indreland was in his truck traveling northbound on Highway 613 when he noticed *691 ahead of him a slow moving gray sedan also traveling in the northbound lane. Good was the driver of the sedan, and he had with him Andrea Thomley, a guest passenger. As Indreland was approaching Good’s car, he moved over into the southbound lane in order to overtake Good, but as he neared, Good initiated a left-hand turn, thereby crossing the lane in which Indreland was driving. Indreland fully engaged his brakes and tried to steer clear of Good but was unsuccessful, striking the rear quarter panel of Good’s car. As a result of the collision, Good suffered injuries to his back and neck, and on September 4, 2001, he filed a negligence action in the Circuit Court of Jackson County alleging that Indreland (a) failed to keep a proper lookout; (b) was generally inattentive; (c) failed to see what he should have seen and do what he should have done; (d) failed to keep his vehicle under proper control; (e) passed improperly; and (f) was liable for any and all negligence that may be shown at trial on the merits.
¶ 4. A number of facts surrounding the collision were highly contested by the parties. The posted speed limit on the stretch of road in question was fifty-five miles per hour, and Indreland testified that he was traveling at approximately fifty-two miles per hour as he approached Good’s car. Good, on the other hand, testified that he overheard Indreland tell the police at the time of the wreck that he was driving at fifty-five miles per hour. At trial, Good declared that, before executing the left-hand turn in question, he maintained a continuous check on Indreland’s approaching truck in his rear-view mirror, began slowing down, and then indicated his intention to turn by activating the car’s left-turn signal. Good claimed with unquestionable certainty that he engaged the left-turn signal and that he positively informed the police of this fact at the time of the wreck. Thomley corroborated Good’s claim testifying that Good positively engaged the car’s left-turn signal prior to executing the turn. Contrarily, Indreland testified that, as he approached Good’s car, Good appeared to be looking in the direction of Thomley and that, upon reaching the car, Good executed a left-hand turn across his lane of travel without indicating such intention by either a turn signal or even brake lights. Indreland further testified that he overheard Good tell the police at the time of the wreck that he was uncertain whether he activated the left-turn signal before turning and that Good later admitted this fact, as indicated in the police report. One uncontroverted fact relevant to this appeal, however, is that Indre-land did not sound his truck’s horn as he attempted to overtake Good’s car.
¶ 5. On October 15, 2003, at the close of all evidence, the jury was instructed as to the applicable law and then retired for deliberation. A few hours later, the jury declared that they had reached a verdict and that they had found in favor of Indre-land. Good subsequently filed this appeal.
LAW AND ANALYSIS
¶ 6. We will begin by discussing Good’s challenge to the sufficiency of the evidence resulting in the verdict for Indreland. However, for clarity and brevity in dispensing with the remaining issues, we will combine our discussion of Good’s challenges to the admissibility of evidence in regards to his in limine motions. We will also jointly discuss the final two issues, in which Good challenges the trial court’s instruction of the applicable law to the jury.
I.
Sufficiency of the Evidence
¶ 7. In his first assignment of error, Good challenges the sufficiency of the evidence presented at trial claiming that the *692 verdict returned by the jury was contrary to the overwhelming weight of the credible evidence and clearly showed bias, passion, and prejudice on behalf of the jury. Good contends that the jury’s bias, passion, and prejudice is evident from responses procured during voir dire when his counsel asked the venire for their individual opinions regarding the tort system utilized in Mississippi at that time. Two individuals who sat as jurors during the trial expressed their general concerns regarding abuses in the legal system resulting from the filing of frivolous lawsuits and the awarding of excessive damages and the need for tort reform based on ever increasing insurance premiums. Despite the ostensibly obvious bias, passion, and prejudice of these jurors, Good made only one motion to strike a juror for cause and never objected to the composition of the jury pool at trial.
¶ 8. This fact, however, is inconsequential to the resolution of this issue, for the more significant fact is that Good filed neither a motion for judgment notwithstanding the verdict nor a motion for a new trial with the lower court. The record reveals that Good did move for a directed verdict at the close of the defense’s case, but Good completely failed to challenge in the lower court the jury’s verdict for In-dreland. Without such challenge, this Court has no trial court ruling to review regarding the assignment of error Good now advances, and we are accordingly unable to consider this issue on appeal. Hogan v. Cunningham, 252 Miss. 216, 223, 172 So.2d 408, 411 (1965).
¶ 9. In seeking remand for a new trial, Good additionally claims in his brief that the verdict was improper in light of the circumstances surrounding the jury’s arrival at a verdict. After deliberating for about two hours, the jury sent a note to the judge asking, “Will Mr. Indreland’s insurance company pay damages, if so awarded, or will any damages come out of his own pocket?” The court replied on the bottom of the note writing, “The Court cannot respond to this question.” Good contends that the jury’s asking of this questions reveals that it had already decided the issue of liability in his favor and simply wanted information regarding In-dreland’s insurance before awarding damages. The rationale behind this contention of Good in this regard escapes us; however, we discuss the mention of insurance at trial because Good asserts in his brief that the disclosure of whether a party has liability insurance coverage is grounds for a mistrial. The record shows that no such disclosure was made at trial; therefore, we need not address the issue.
II.
Admission of Evidence
¶ 10. In the summer of 2001, a couple of months after the collision with Indreland, Good filed a workers’ compensation claim for injuries, ie., tendinitis in his elbows and carpal tunnel syndrome in his wrists, that he developed as a result of his work as a welder at Ingalls Shipyard. In December of that year, Good was a passenger when involved in another motor vehicle collision, from which he suffered a broken collar bone. Prior to the start of trial, Good filed two motions in limine requesting that evidence as to each of these incidents and the injuries associated with them be excluded at trial, but the motions were denied. Good claims the motions were denied in error.
¶ 11. Good maintains that any evidence as to either incident was inadmissible at trial because the injuries that resulted from each have no relevance to the injuries he suffered as a result of Indreland’s negligence. He contends that any evidence regarding either incident served only to *693 confuse the jury, thereby prejudicing him. Good additionally maintains that any evidence of injuries and medical conditions not relevant to the injuries resulting from the collision with Indreland is privileged and, therefore, immune from discovery.
¶ 12. Decisions surrounding the admission or suppression of evidence are left to the sound discretion of the trial judge, and appellate courts must not reverse such decisions absent an abuse of that discretion. Sumrall v. Miss. Power Co., 693 So.2d 359, 365 (Miss.1997). Good filed suit against Indreland seeking redress for injuries to his neck and back that he alleged were solely attributable to In-dreland’s negligence. Indreland, however, can only be liable for injuries or damages to Good resulting from his negligence; “therefore, any evidence tending to show that any part of [Good’s] injury may have occurred as a result of some other cause was relevant.” Walker v. Lamberson, 243 So.2d 410, 411 (Miss.1971). The relevance of these injuries also invalidates Good’s alleged medical privilege. Accordingly, the trial court did not abuse its discretion in denying Good’s in limine motions.
III.
Instruction of the Jury
¶ 13. Good’s first argument centers around instructions P-I, P-I(a), and P — 1(b). Instruction P-I stated that “In-dreland, as driver of the overtaking vehicle!,] had a duty to blow his horn to signal to Plaintiff, Robert Good, that he intended to pass[,]” and that if “Indreland! ] failed to blow his horn” the jury “may find him negligent in that regard.” The trial court refused the instruction explaining that P-I “is peremptory in nature. If Mr. Indre-land didn’t blow his horn, [this] instruction says he’s negligent, and I don’t think that’s the law.” Instruction P-I(a) apparently was a verbatim statement of the law enunciated in Miss.Code Ann. § 63-3-609(a) and (b) (Rev.2004), but Good eventually withdrew it. By withdrawing P-I(a) and by failing to include it in the record on appeal, any issue as to the instruction is not properly before this Court, so Good has effectively waived any consideration of it on appeal. See Shell Oil Co. v. Murrah, 493 So.2d 1274, 1276 (Miss.1986). Instruction P-I(b), on the other hand, only contained the language of Section 63 — 3—609(a), excluding subsection (b), and was given by the court. Good maintains that P-I(b) failed to fully state all of the applicable law and, therefore, was erroneously given to the jury.
¶ 14. Good’s second argument concerns instruction P-XI, patterned after Section 63-3-505, which states that “[t]he driver or operator of any motor vehicle must decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic.” Miss.Code Ann. § 63-3-505 (Rev.2004). The instruction declared that if the jury finds that Indreland was presented with any “of the foregoing circumstances” requiring that he decrease his speed and that he “did not decrease his speed” then Indreland must be found “negligent for driving at an excessive rate of speed.” The court refused P-XI explaining that P-XI “appears to me to be completely abstract in nature. It doesn’t tie it in to anything.” Good maintains that the court’s refusal was in error.
¶ 15. Trial judges are vested with considerable discretion in instructing the jury. Southland Enters., Inc. v. Newton County, 838 So.2d 286, 289(¶ 9) (Miss.2003). In determining whether the trial court committed reversible error in granting or refusing various instructions, appel *694 late courts must read the instructions actually given as a whole, and if they, when read as a whole, are a fair, though not necessarily perfect, expression of the law of the case, no reversible error will be found. Fielder v. Magnolia Beverage Co., 757 So.2d 925, 929(¶ 10) (Miss.1999). Therefore, if the instructions given adequately instruct the jury as to the applicable law, the refused instruction may not be a source of complaint. Adkins v. Sanders, 871 So.2d 732, 736(¶ 9) (Miss.2004). Furthermore, any proposed instruction can only be given if it is a correct statement of the law while also supported by the evidence presented at tidal. Id. at 737(¶ 11).
¶ 16. Instruction P-I was properly refused as an inaccurate statement of the law because “no statute ... imposes upon the driver of an overtaking vehicle the absolute duty of sounding an audible signal before passing without regard to whether the sounding of such audible signal is reasonably necessary to insure safe operation.” Clark v. Mask, 232 Miss. 65, 73-74, 98 So.2d 467, 471-72 (1957). Despite the claimed inadequacy of P-I(b) and the erroneous refusal of P-XI, we find that the instructions, when read as a whole, fairly instructed the jury as to the applicable law, so we cannot possibly hold the trial court in error. Accordingly, this issue is without merit.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J„ CONCURS IN RESULT ONLY.